THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v. MATTHEW WALKER, Appellant.—

Munder, Acting P. J., Martuscello and Gulotta, JJ., concur, with the following separate memoranda: Martuscello, J. I am of the view that the rule enunciated in *Harrington* v. *California* (395 U. S. 250), that the denial of the right of confrontation, as it is defined by *Bruton* v. *United States* (391 U. S. 123), may be found to be harmless error, applies to the case at bar. I am mindful of the fact that the test of harmless error is a stringent one and that we should not give too much emphasis to overwhelming evidence of guilt (*Chapman* v. *California*, 386 U. S. 18). However, an examination of the record indicates to me that the confession of the codefendant, Preston Smith, did not contribute to the conviction and could not have done so (*Harrington* v. *California, supra*; *Chapman* v. *California, supra*; *Fahy* v. *Connecticut*, 375 U. S. 85). At the trial the complainant, a married 29-year-old woman and the mother of two children, testified that on the evening of the crime she was driving home from a meeting in Baldwin, Long Island, in her husband's car. Appellant, Walker, followed her for a while and when she was stopped for a light he entered her car with a knife and demanded money. She had never met Walker before and he punched her and broke her nose. Thereafter, following a struggle during which her car was damaged when it was in an accident, Walker dragged her out of her car and into his car. After driving her around for a while he forced her to have intercourse with him in the back seat of his car. Thereafter Smith also raped her. In Walker's own statement, which was found at a *Huntley* hearing to be voluntary, he placed himself at the scene of the crime. He admitted that he entered the complainant's car and that he struggled with her and that as a result she sustained a bleeding nose. He stated that he had a knife and that he told the woman that he needed money for gas. Furthermore, he stated that he took the woman to his own car and that he engaged in sexual intercourse with her. Afterwards he dropped her off near a doctor's house. A doctor testified that the complainant came to his home during the early morning hours of the day of the crime and that she was bloody and hysterical. She told him that she had been sexually assaulted and she appeared to have a broken nose and finger. X rays from the hospital to which the complainant was taken established that she had sustained a broken nose and finger. The medical examination also indicated that sperm was found in her vagina. On the day following the crime Walker reported to the police that his car had been stolen. When it was recovered, blood stains were found in the back seat and a knife was also found. The blood was found to be of Type A, as was the blood found on Walker's underwear. It was also established that the complainant had Type A blood. The complainant had given the police the license plate number of the car in which she was raped and it turned out that it was owned by Walker. Walker took the stand in his own defense and presented a version of the incident entirely different from the one he originally gave the police. He claimed that he had met the complainant several months before the incident and that they became friendly and he gave her a telephone number. He testified that she called him at the number (a bar) on several occasions and they met at a railroad station. He said the next time they met it was behind a bar he frequented and they had intercourse and that altogether they had intercourse four times. The alleged rape took place at about 1:30 A.M. on October 4, 1962. Walker testified that at

1:20 A.M. he met the complainant and had sexual intercourse with her in her car. Thereafter, he stated, he spoke to her about having Smith (the codefendant) and his girl in their company, but she resisted the idea and a quarrel followed and he decided to take her home. Walker testified that he got Smith to drive his car and told him to follow while he drove the complainant's car; that during the ride he had an accident and as a result the complainant was injured; and that as he was thereafter unable to drive the complainant's car, he had her enter his automobile, which had been driven to the scene by Smith, and subsequently he dropped her off near a doctor's office. He denied that he had engaged in any sexual intercourse at that time. This testimony is completely refuted by the fact that blood of the complainant's type was found on his underpants, thus establishing that the intercourse took place following the injury to the complainant, and not earlier. On the basis of the evidence I am of the view that any error committed in permitting Smith's confession to be read into evidence did not contribute, and could not have contributed, to the conviction. This is particularly true in view of the damning nature of Walker's own statement and the physical evidence which completely refuted his testimony at the trial. Munder, Acting P. J., and Gulotta, J., concur with the views expressed in the memorandum by Martuscello, J.; and Munder, Acting P. J., also relies on the views set forth in his following additional memorandum, in which Gulotta, J., concurs: Here, defendant Walker and his codefendant each made a voluntary confession implicating himself and the other in the crimes charged. Under these circumstances, "the logic of *Bruton* is inapplicable" (*People* v. *McNeil*, 24 N Y 2d 550, 552). In *Bruton*, a defendant who did not confess was tried along with a codefendant who did. Here, defendant Walker confessed and his confession, in my opinion, "interlocks with and supports" the confession of his codefendant (see *United States ex rel. Catanzaro* v. *Mancusi*, 404 F. 2d 296, 300, cert. den. 397 U. S. 942). For this reason, his present claim must be rejected. Also, although no limiting instructions were given with respect to the confessions, there was no exception taken to the trial court's charge and there was no request for such instructions. Shapiro, J., dissents and votes to reverse the order and grant the application, with the following memorandum, in which Benjamin, J., concurs: Appellant, Matthew Walker, and one Preston Smith were jointly indicted and after trial were convicted of the crimes of rape, attempted robbery and grand larceny (all in the first degree) and for carrying and using a dangerous weapon. Walker applied in the court below for *coram nobis* relief based on his contention that the introduction in evidence of Smith's confession, without the latter taking the witness stand, deprived him of his constitutional right of confrontation as that right was interpreted in *Bruton* v. *United States* (391 U. S. 123).* In denying appellant's application for a writ of error *coram nobis* the court below took the position that, since both Smith and Walker were represented by the same attorney and since Walker testified and Smith did not, the failure of Smith to testify was a deliberate trial tactic of an experienced attorney which was actively participated in by Walker. In that connection the court said that "it would appear, then, that the failure of Smith, who was under control of Walker's lawyer, to take the stand, was a purposeful determination and that Walker, under either view, was not deprived of a right to confrontation." In effect the court was determining that Smith was under Walker's control and that Walker waived his right of confrontation by deliberately keep-

---

* "Of course, *coram nobis* is the proper remedy to raise an alleged *Bruton* error" (*People* v. *Baker* 26 N Y 2d 169, 170, n. 1) and the right to *Bruton* relief is retroactive (*People* v. *Pohl,* 23 N Y 2d 290, 292).

ing Smith off the witness stand. That conclusion is entirely barren of support in the record and rests upon a mere surmise which cannot act as a foundation for a finding of waiver by Walker. I therefore proceed to the basic *Bruton* question involved. In *Bruton* the court held that, even though the Trial Judge had cautioned the jury that one defendant's confession could not be used against the other, the appealing defendant's right to confrontation was violated when his non-testifying codefendant's confession which implicated him in the commission of the crime charged was admitted in evidence. It seems clear therefore that *Bruton* mandates a new trial for Walker unless the subsequent cases of *Chapman* v. *California* (386 U. S. 18), *Harrington* v. *California* (395 U. S. 250), *Fahy* v. *Connecticut* (375 U. S. 85), *People* v. *Baker* (26 N Y 2d 169) and *People* v. *McNeil* (24 N Y 2d 550) make its rationale inapplicable to the fact pattern here. In *McNeil,* which is a distillation of the views expressed in the other cases cited above, Judge SCILEPPI, writing for a closely divided court, pointed out that *Bruton* had held that, in cases involving joint trials in which only one of the defendants confessed and implicated the other, it was error, despite limiting instructions, to receive the confession in evidence because of the substantial risk that the jury, in determining the nonconfessor's guilt, would be unduly influenced by the extrajudicial statement, thus violating his right of confrontation guaranteed him by the Sixth Amendment of the Constitution of the United States. However, said Judge SCILEPPI, where the jury has heard not only the codefendant's confession but the defendant's own confession, the devastating risk from the lack of confrontation found in *Bruton* did not exist. He therefore came to the conclusion that the logic of *Bruton* is inapplicable in a case where both defendants have made full and voluntary confessions which are " *almost identical* " (p. 552, emphasis supplied). In this case, however, an examination of the Walker and Smith statements clearly indicates that they are not " almost identical ". In fact there are serious discrepancies between them. In the Smith statement the latter, among other things, said: " When we reached Suffolk Avenue, Brentwood, New York, I saw a white woman pass us in a new blue car. Mat [Walker] told me ' When she stops for a red light, you jump out of the car and snatch her purse. I told him that I would. The reason that we were going to do this was because we needed some money and I agreed to help Mat get some. Then the woman stopped at a red light and Mat said ' Get out and get it '. I told him that I was afraid to and he just jumped out of the car and walked over to the drivers side of the woman's car and opened the door. I saw him scuffling with the woman and then I saw him punch her in the face and knock her over. Then the light changed and he started up the woman's car and they started fighting each other and the car jumped the curb and * * * As I got out of his car I saw Mat pulling the woman out of her car and then he picked her up and ran to his car. He slammed her down on her back on the back floor of his car and he told me to drive off. I told him that I didn't want to and he pulled a silver colored kitchen knife on me and he slapped me in the face and told me to get on the floor of the car with the woman which I did and then he drove off. * * * The woman had stopped screaming but she was still bleeding from her nose. I had seen Mat hit this woman with his fist when he got into her car and then he hit her again a few times when he pulled her out of her car and into his car. I was shown a silver colored knife that I identified as the knife that Matthew Walker used on the woman and threatened me with by placing my initials ' PS ' and the date 10–4–62 on the blade." Thus, Smith's statement delineated a conspiracy to rob allegedly suggested by Walker, a recitation that the robbery had been accomplished, and also an assault upon the

prosecutrix, a rape of the prosecutrix, and a threatened and an actual assault upon him, Smith, by Walker. In contrast to the damning statement of Smith which tended to exculpate Smith of the robbery and assault entirely, Walker's statement made no mention of any proposed or consummated robbery and intimated that when the prosecutrix saw him she acted "like she was inviting * * * [him] in", denied any assault upon her and indicated that the sexual intercourse was committed with at least the passive consent of the prosecutrix because "she was not screaming or crying" and when "I started moving back and forth * * * she put her arms around me and moved with me." The utter discrepancies between the two statements are thus readily apparent and as a matter of law it may not be held that they are "almost identical" so as to come within the *McNeil* rule. On this ground alone Walker should have been granted a writ of error *coram nobis* but there is yet another reason for reversal here. In *McNeil* the court emphasized that the confessions "were received in evidence with clear, forceful limiting instructions that each confession should be considered only against the declarant" (p. 552). Here, not only were there no such forceful instructions but the record is devoid of any limiting instructions of any kind. Furthermore, it may not be gainsaid that even before *Bruton* it was the law in this State that "in a case in which a defendant was implicated by an out-of-court statement of a codefendant tried jointly with him, his conviction could not stand" (FULD, Ch. J., [p. 553] in his dissent in *McNeil*, citing, among other cases, *People* v. *La Belle*, 18 N Y 2d 405; *People* v. *Burrelle*, 21 N Y 2d 265; *People* v. *Adams*, 21 N Y 2d 397). Here, that is precisely what happened, for the confession of Smith, who did not testify, was received in evidence. Under such circumstances the error may not be disregarded unless we are able "to declare beyond a reasonable doubt that the error did not contribute to the finding of guilty" (*People* v. *Smith*, 38 Ill. 2d 13, 15; *Chapman* v. *California*, 386 U. S. 18, 23–24, *supra*). In a case such as this, where the only affirmative evidence for the prosecution (aside from the two confessions) was the testimony of the prosecutrix, it seems obvious that a finding that, as a matter of law, the error did not contribute to the finding of guilty is utterly without justification. It need only be added that, to compound the basic constitutional confrontation error here committed, the District Attorney was permitted by the trial court to tell the jury in his summation that in determining the guilt of appellant the two confessions could be used to buttress each other.