**Raymond Mendoza OLIVAS, aka Junior Calderon, Appellant,**

v.

**STATE OF ARIZONA ex rel., Frank A. EYMAN, Warden, Arizona State Prison, et al., Appellees.**

No. 24912.

United States Court of Appeals, Ninth Circuit.

Sept. 1, 1971.

Miller & Haggerty, Phoenix, Ariz., for appellant.

Gary Nelson, Arizona Atty. Gen., Carl Waag, Asst. Atty. Gen., Phoenix, Ariz., for appellees.

Before HAMLEY and CARTER, Circuit Judges, and BELLONI, District Judge.*

BELLONI, District Judge:

Raymond Mendoza Olivas, an Arizona State prisoner, is appealing from a denial of his petition for a writ of habeas corpus. He was convicted after a trial by jury of first degree murder and sentenced to life imprisonment. After exhausting his state remedies, he filed his petition in the federal court. The District Court denied relief on the ground that the admission of certain testimony during the course of the trial was harmless error. We affirm.

---

* The Honorable Robert C. Belloni, United States District Judge for the District of Oregon, sitting by designation.

Appellant and Jesus Arthur Pina were jointly indicted and tried for the murder of one Rudy Valenzuela. At the trial Louis Lopez, a witness for the prosecution, testified that in the early morning hours of February 25, 1961, Pina, appellant, Lopez and Valenzuela drove some distance from the city of Phoenix to a secluded area on the desert. Upon their arrival at the location Pina accused Valenzuela of trying to "set him up" for a narcotics arrest. Thereafter Pina, using appellant's gun, fired a shot at Valenzuela. Lopez testified that after this shot "the wind seemed to be knocked out of Mr. Valenzuela" but he talked to Pina and struggled to escape. Pina aimed a second shot which misfired. Lopez did not see where the third shot struck Valenzuela but after it was fired a scuffle ensued during which the gun was knocked out of Pinas' hand and Valenzuela attempted to run away. Pina and appellant ran after him, knocked him down and beat him with their fists. Thereafter appellant held Valenzuela down while Pina returned to the car for the tire jack.

Lopez went to the car and remained there for a few minutes until Pina and appellant returned and informed him that Valenzuela was dead.

Appellant and Pina then dragged the body for a distance and attempted to conceal it. Lopez assisted them in erasing the drag marks. They replaced the jack in the car and searched for the lost gun but were unable to locate it. The three then returned to Phoenix at approximately 4 a. m. When they entered Pina's house Lopez noticed that "Both Mr. Pina and Mr. Olivas' clothes were bloody, all disarranged." Lopez took the jack out of the car and at that time noticed that it was covered with hair, blood and flesh. He washed the jack and hid it in a friend's garage.

Later Lopez was able to lead the police to the exact area where the body had been found. He pointed out within a few feet the actual location where the murder weapon was found by the police. The investigating police officer testified to having observed the drag marks made by the body and the shovel marks which indicated that an attempt had been made to conceal the body. The jack was recovered from its hiding place and was found to have remnants of human hair wedged under a rivet.

All of the foregoing overwhelming evidence of guilt was properly admitted.

The two items of evidence which were improperly admitted were as follows:

Lopez testified that later that same day, February 25th, he met with Pina for lunch and during the course of their conversation Pina told him that he (Pina) and the appellant had taken turns hitting the deceased over the head with the jack "like you would a golf ball."

Harry Ludlow, an acquaintance of Pina, stated that on February 26, 1961, Pina told him that he, appellant and Lopez had taken Valenzuela out in the desert and killed him.

In both instances the trial judge admonished the jury that the out-of-court statements could not be used as evidence against appellant.

The Arizona Supreme Court and the District Court found that in both instances this testimony was admitted in violation of the standards set forth in Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968), but that its admission was harmless error. We agree.

Not all federal constitutional errors require reversal of a conviction. Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967). It is only where there is a reasonable possibility that the improperly admitted testimony contributed to the conviction that a reversal is indicated. Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171 (1963); Chapman v. California, supra; Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). Such is not the situation in our case. The direct eye witness testimony of Lopez was, in all its gruesome details, supported and corrobo-

rated by circumstantial evidence. It was so overwhelming that we must agree with the District Judge that the error was harmless beyond a reasonable doubt. Testimony of the out-of-court statements, viewed in the totality of all the evidence, although improperly admitted, could not have had such an impact on the mind of an average juror as to contribute to the conviction. Harrington v. California, supra. It did no more than restate what had already been testified to by the eye witness.

The judgment of the District Court is affirmed.