278 So.2d 380

**Foy AMAN**

v.

**STATE.**

**4 Div. 87.**

Court of Criminal Appeals of Alabama.

Dec. 12, 1972.

Russell L. Irvy, Eufaula, for appellant.

William J. Baxley, Atty. Gen., and John A. Yung, IV, Asst. Atty. Gen., for the State.

ALMON, Judge.

Foy Aman was convicted of assault with intent to murder and sentenced to two years in the penitentiary.

He insists that his conviction must be reversed because he was not represented by counsel at his preliminary hearing held on July 10, 1970.

On June 22, 1970, seventeen days prior to the preliminary hearing, the United States Supreme Court decided the case of Coleman v. Alabama, 399 U.S. 1, 90 S. Ct. 1999, 26 L.Ed.2d 387. The Court held the preliminary hearing in Alabama to be a critical stage of the prosecution, thus guaranteeing to defendant the right to have assistance of counsel absent a knowing and voluntary waiver. In *Coleman* the Court remanded the cases to the Alabama courts with instruction to make a determination of whether the denial of counsel at the preliminary hearing was "harmless error" under the standard set forth in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L. Ed.2d 705. See Coleman v. State, 46 Ala. App. 737, 239 So.2d 223. The absence of counsel may be "harmless error" if the reviewing court is "able to declare a belief that it was harmless [error] beyond a reasonable doubt." *Chapman*, supra. Stated differently, "[If] there is a reasonable possibility that the . . . [error] complained of might have contributed to the conviction, [then the error is not harmless]." *Chapman*, supra, quoting from Fahy v. Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171.

In brief, the State urges that resolution of the question of whether the absence of counsel at the preliminary hearing was

prejudicial to appellant is unnecessary due to a voluntary and knowing waiver of the right to counsel at the hearing. Approximately one or two weeks prior to the preliminary hearing appellant and his father, Clarence Aman, went to the office of the Deputy District Attorney, Mr. Sam LeMaistre, to confer with him about employing an attorney for the hearing. Mr. LeMaistre testified, on motion for a new trial, that the following transpired at this meeting:

"Q. This is Mr. Sam LeMaistre who is the Deputy District Attorney for this County. Mr. LeMaistre, let me recall an interview that you had with the Defendant prior to a Preliminary Hearing in County Court on the case in question. If you recall that, do you remember approximately when it was?

"A. Yes, sir, it was a week or two before the Preliminary Hearing was held and after the Defendant had been arrested on a warrant. The Defendant and his father, Mr. Clarence Aman, came to my office and asked me should they employ an attorney on the Preliminary Hearing. I don't remember the exact words, of course, but the substance of our conversation was this: I told them that that decision would necessarily have to be made by them, but I would explain the entire procedure to them and I explained to them what takes place at the Preliminary Hearing. I explained to them that they were not required to testify and had a right to remain silent and I explained to them the Preliminary Hearing could not find whether he was guilty or innocent, but would only determine whether there was sufficient evidence to bind the case over to investigation by the Grand Jury. If there was insufficient evidence, I explained, the case could be dismissed, but he could not be found guilty in that hearing.

"I told him, of course, he had a right to an attorney, but as to whether he should employ one at that state of the proceedings, I could not advise him; that was his decision.

"Q. Now, following this discussion with the Defendant and his father, they left your office?

"A. Yes, sir; they left my office.

"Q. Did they request an attorney at any time? Did they at any time ask you to get them an attorney?

"A. No, sir.

"Q. Did they ask you to request the Court to get them an attorney?

"A. No, sir.

"Q. Did they at any time?

"A. No, sir; and on the Preliminary Hearing they were again asked if they desired to have an attorney and they said, 'No.' The Defendant answered 'No' as well as his father."

Mr. LeMaistre further testified that at no time did either appellant or his father indicate their financial status to him.

At first glance it would appear that appellant did in fact waive his right to counsel at the hearing, being fully informed of this right. However, appellant testified that he was never informed that if he could not afford an attorney one would be appointed for him. We quote from the record:

"THE COURT: Did he explain to you that if you were not able to hire one that the Court would appoint one for you?

"WITNESS: No, sir.

"THE COURT: Do you remember anything on that point, Sam?
"MR. LEMAISTRE: No, sir; I don't remember discussing that with him."

We are unable to say a waiver of his constitutional rights occurred. This situation is roughly analogous to a failure to

advise a suspect prior to police interrogation that if he cannot afford an attorney one will be appointed for him. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L. Ed.2d 694.

At the hearing on appellant's motion for new trial, testimony was given by both the State and the defense as to what transpired at the preliminary hearing.

Three witnesses, Phil Hurst, Mildred Hurst, and John Louie Price, testified for the State at the preliminary hearing. Mildred Hurst is the former wife of appellant. On June 11, 1970, Phil Hurst and Mildred Hurst were married. The Hursts testified in substance that on the afternoon in question, June 14, 1970, a Sunday, they were sitting with two others on the front porch of Hurst's home; that this home was near the Bethlehem Church; that while sitting there appellant and his father drove their car to a point approximately one hundred yards from the house; that appellant and his father sat in the car and observed those on the porch for several minutes and then left; that a few minutes later appellant and his father returned; that appellant was in the passenger seat; that they saw appellant with an object in his hand lean out the car window; and that they heard a shot fired and a bullet go by their porch.

John Louis Price testified at the preliminary hearing and trial that appellant and his father, shortly before the incident took place, asked directions to the Hurst residence.

Appellant did not cross-examine any of the three witnesses, except for asking Mildred Hurst if she had seen a gun and what kind of gunshot she heard. Appellant offered no evidence in his own behalf.

The identical testimony was given by these same three witnesses at trial; additionally, others, including persons who observed the incident from inside the church, gave testimony corroborating that given at the preliminary hearing.

Mr. Justice Brennan, in *Coleman*, supra, suggested several reasons which led the court to hold that the preliminary hearing is a critical stage in Alabama criminal procedure:

" . . . First, the lawyer's skilled examination and cross-examination of witnesses may expose fatal weaknesses in the State's case that may lead the magistrate to refuse to bind the accused over. Second, in any event, the skilled interrogation of witnesses by an experienced lawyer can fashion a vital impeachment tool for use in cross-examination of the State's witnesses at the trial, or preserve testimony favorable to the accused of a witness who does not appear at the trial. Third, trained counsel can more effectively discover the case the State has against his client and make possible the preparation of a proper defense to meet that case at the trial. Fourth, counsel can also be influential at the preliminary hearing in making effective arguments for the accused on such matters as the necessity for an early psychiatric examination or bail."

■ Using the above standard, we conclude that the absence of counsel was harmless error beyond a reasonable doubt. Skillful cross-examination by experienced counsel would expose no "fatal weakness" in the State's case. The number of eyewitnesses to this incident negates any inference that a witness's testimony at trial would be impeached by that given by him at preliminary hearing. All of the witnesses who testified at the preliminary hearing testified at trial. The simplicity of this case and the opportunity of counsel to investigate the State's case prior to trial demonstrate the fallacy of any argument that appellant was prejudiced by the absence of counsel at the preliminary hearing. Finally, appellant was out on bail throughout the proceedings and defense counsel never intimated a need for a psychiatric examination. At no stage of the criminal prosecution, or on appeal, has

counsel for appellant made any concrete claim of prejudice to the appellant.

Only an indigent has a constitutional right to court-appointed counsel at his preliminary hearing. From the record for aught it appears appellant never stated his financial inability to employ counsel. Indeed, at the conference with Mr. LeMaistre appellant and his father asked if they should "employ" counsel. In view of our holding that no prejudice resulted in the absence of counsel at the preliminary hearing, we pretermit consideration of whether appellant has established his right to court-appointed counsel.

Accordingly, as the error complained of was harmless beyond a reasonable doubt, this judgment of conviction is due to be and is hereby affirmed.

Affirmed.

All the Judges concur.