THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. MILLIE R. LEE, Defendant-Appellant.

Fifth District    No. 5—82—0539

Opinion filed December 9, 1987.

Daniel M. Kirwan and Dan W. Evers, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.

Neil F. Hartigan, Attorney General, of Springfield (Jill Wine-Banks and Mark L. Rotert, Assistant Attorneys General, of Chicago, of counsel), for the People.

JUSTICE WELCH delivered the opinion of the court:

This cause comes before this court on remand from the United States Supreme Court. (*Lee v. Illinois* (1986), 476 U.S. 530, 90 L. Ed. 2d 514, 106 S. Ct. 2056.) The Supreme Court held that the admission in defendant Lee's trial of a codefendant's confession which implicated defendant Lee, where the codefendant did not testify, violated defendant Lee's sixth amendment right of confrontation. (See *Bruton v. United States* (1968), 391 U.S. 123, 20 L. Ed. 2d 476, 88 S. Ct. 1620.) The cause was remanded to this court for a determination as to whether this error, in the particular facts of this case, requires reversal of defendant's conviction(s), or is merely harmless. To decide this question it is necessary to review the facts of the case and the evidence adduced at trial.

Defendant, Millie Renee Lee, and her codefendant, Edwin Thomas, were indicted on two counts of murder. The alleged victims were defendant's aunt, Mattie Darden, and Mattie's friend, Odessa Donahue Harris. The two codefendants were tried jointly to the court

sitting without a jury. The State's evidence consisted mainly of the confessions of defendant and her codefendant. Neither codefendant presented any evidence in defense.

On the night of February 13, 1982, a fire was discovered in a closet of an apartment at the Roosevelt Homes in East St. Louis. It was discovered that the item on fire was a human body later identified as that of Mattie Darden. The body was clothed in an orange and blue nightgown and was wrapped in two blankets. There was also a piece of white cloth wrapped around the victim's neck.

An autopsy revealed multiple stab wounds to the anterior thorax, a stab wound to the posterior thorax and three lacerations to the skull. The lacerations to the skull were caused by a blunt instrument, possibly a skillet. These injuries were the cause of the victim's death.

Also discovered next to the closet door was a can of charcoal lighter fluid. James Trione testified that he is the operator of Bunkum Liquor Store near the Roosevelt Homes. On the night of February 11, 1982, he sold just such a can of lighter fluid to a young female whom he recognized as a regular customer, although Trione could not remember her name when first asked by the police. After conferring with a store employee, he remembered that her name was Renee. At trial, Trione identified the defendant as the woman who had purchased the lighter fluid.

On February 14, 1982, a purse was discovered at a bus stop approximately 150 feet south of the apartment where the burnt body had been found. The purse contained papers indicating it belonged to Odessa Donahue Harris. At this time the police suspected that the burnt body found in the closet might be that of Odessa Donahue Harris. They began an investigation into Odessa's whereabouts, during the course of which they proceeded to defendant's apartment at the Roosevelt Homes.

The door to defendant's apartment was opened by codefendant Edwin Thomas. Defendant was summoned and was asked if she knew Odessa Harris. Defendant responded yes, but that she had not seen Odessa in months. Defendant explained that the apartment actually belonged to her aunt, Mattie Darden, who was in Peoria. Defendant agreed to go the police station to attempt to identify the burnt body as that of Odessa Harris.

While at the police station, the police learned from the coroner's office that the burnt body was not that of Odessa Harris. Defendant had begun acting suspiciously, so she was advised of her rights and questioned as to the whereabouts of her aunt, Mattie Darden. Defendant gave several conflicting explanations as to her aunt's whereabouts

before confessing to her part in the murders.

Defendant's written confession was admitted into evidence at her trial. The confession explained that on the night of the murders, she and codefendant Edwin Thomas, were at Mattie Darden's apartment watching television. Mattie and Odessa came in and went into the bedroom. Mattie changed into an orange and blue nightgown.

Defendant and Thomas got into an argument in the kitchen and Odessa came in and admonished them for being so loud. Odessa then returned to the bedroom. Defendant called Odessa back into the kitchen to ask her if Mattie had paid the rent. Odessa responded yes and made further comment about the argument between defendant and Thomas. At this time Thomas was in the living room. As Odessa walked past him on her way back to the bedroom, she gave him a dirty look. Thomas stood up with a large knife in his hand and stabbed Odessa in the back. Odessa fell to the floor and began calling for Mattie.

At this point, defendant ran into the bedroom where Mattie was sitting on the bed with a knife in her hand. Mattie threatened to kill defendant and swung the knife at her. Defendant ran into the kitchen and grabbed a butcher knife. She returned to the bedroom and began stabbing Mattie. Mattie fell to the floor, moaning. In an attempt to quiet Mattie, defendant tied a white blouse around her mouth.

Thomas then entered the bedroom. Defendant told him that Mattie was still alive and told him to get a hammer so that defendant could knock Mattie into unconsciousness. Because Thomas could not find a hammer, defendant told him to bring a skillet. Thomas returned with a black cast iron skillet. Defendant repeatedly hit Mattie on the head with the skillet until the skillet broke into pieces. Thomas then brought defendant a different skillet. This skillet had grease in it which splattered around the room as defendant hit Mattie with it. Thomas then took the skillet and hit Mattie repeatedly in the head.

Defendant and Thomas proceeded to dispose of the bodies. Odessa's body was placed in a black trunk with some rags. The trunk was placed outside behind the apartment near the trash bin. Defendant and Thomas planned to burn the trunk with some trash.

Thomas attempted to carry Mattie's body, but it was too heavy. Defendant and Thomas rolled Mattie's body in several blankets and tied it in a lawn chair. They carried the lawn chair to a nearby vacant apartment and placed the body in a closet.

Defendant then went to Bunkum Liquor Store and purchased some charcoal lighter fluid and Hefty trash bags. The two codefendants then returned to Mattie's apartment. Later that evening they

went outside and poured lighter fluid into the trunk containing Odessa's body and set it afire. The next day they removed what was left of Odessa's body from the trunk and placed it in a cardboard box in the trash.

Defendant and Thomas gathered all of Odessa's and Mattie's personal belongings and the skillets and placed them into the Hefty trash bags. They thoroughly cleaned the apartment, throwing the trash into various ditches. They removed furniture and repainted some of the walls. They washed the knives and placed them on top of the kitchen cabinets.

Two nights later, Thomas took what was left of the lighter fluid and said he was going to the vacant apartment where they had left Mattie's body. When Thomas returned, he said he had set the body afire.

The confession further explained that on prior occasions, defendant and Thomas had discussed doing something to stop Mattie from harassing defendant, although they had never discussed specifics. The night of the murders, Thomas "just couldn't stand to see" Odessa and Mattie harass defendant anymore. Defendant stated that she did not stab or hit Odessa.

Subsequent to her confession, defendant gave written consent for the police to search her apartment. The police found charred bones and flesh in the trash, later identified as being those of Odessa Harris. Also found were trash bags containing items removed from the apartment, including the skillets. The knives were found on the top of the kitchen cabinets.

Codefendant Edwin Thomas also confessed to his part in the crimes. His confession contained many of the same details contained in defendant's confession. However, Thomas' confession also indicated that he and defendant had planned Mattie's murder. It also explained that just prior to the murders, Thomas and defendant had discussed doing something to Odessa. The plan was to have defendant call Odessa into the kitchen so that Thomas could stab her from behind. It was the admission of this additional evidence incriminating defendant that the United States Supreme Court found to be error.

In pronouncing judgment, the trial court specifically relied upon Thomas' confession in finding defendant guilty of the murders. For the purpose of determining whether this constitutes harmless or reversible error, the United States Supreme Court has referred this court to *Schneble v. Florida* (1972), 405 U.S. 427, 31 L. Ed. 2d 340, 92 S. Ct. 1056.

*Schneble* also involved a violation of the *Bruton* rule. Two code-

fendants were charged with murder and both confessed, admitting their own guilt and implicating the other. Both confessions were admitted at trial, although neither defendant testified. The court held:

> "The mere finding of a violation of [a] *Bruton* rule in the course of the trial, however, does not automatically require reversal of the ensuing criminal conviction. In some cases the properly admitted evidence of guilt is so overwhelming, and the prejudicial effect of the codefendant's admissions so insignificant by comparison, that it is clear beyond a reasonable doubt that the improper use of the admission was harmless error." (405 U.S. 427, 430, 31 L. Ed. 2d 340, 344, 92 S. Ct. 1056, 1059.)

In *Schneble*, the defendant's confession was minutely detailed and completely consistent with the objective evidence. Defendant completely admitted his guilt in grisly detail. His codefendant's statement at most tended to corroborate certain details of defendant's confession; it did not add additional evidence of guilt. Thus, the admission of the codefendant's confession was held to be harmless error.

■■■ The *Schneble* court correctly held that the test for harmless error is whether there is a reasonable possibility that the improperly admitted evidence contributed to the conviction. (See *Fahy v. Connecticut* (1963), 375 U.S. 85, 11 L. Ed. 2d 171, 84 S. Ct. 229.) Further, the error must be shown to be harmless beyond a reasonable doubt; the beneficiary of the error bears this burden. *Chapman v. California* (1967), 386 U.S. 18, 17 L. Ed. 2d 705, 87 S. Ct. 824.

■■ With respect to the murder of Mattie Darden, this court finds that the admission of codefendant Edwin Thomas' confession against defendant was harmless beyond a reasonable doubt. As in *Schneble*, the admission of defendant's own confession supplied overwhelming evidence of her guilt. Although the codefendant's confession indicated that the two defendants had planned the murder of Mattie Darden, this additional evidence would not have been a significant factor in the verdict in light of defendant's own confession. Further, defendant's own confession and the physical evidence adequately rebut any claims that defendant was acting under a sudden and intense passion or in self-defense. The admission of Thomas' confession was harmless beyond a reasonable doubt with respect to the murder of Mattie Darden.

With respect to the murder of Odessa Harris, however, this court finds that the admission of the codefendant's confession did contribute to the verdict. Defendant's confession indicated that she did not participate in, plan or anticipate the murder of Odessa Harris. However,

the codefendant's confession contained additional details implicating defendant in the murder of Odessa Harris which were not present in defendant's confession. Thus, unlike in the *Schneble* case, the codefendant's confession in this case did not simply corroborate defendant's confession.

■ Viewing all of the evidence in the record, other than the codefendant's confession, in the light most favorable to the prosecution, we conclude that the trier of fact could have determined that defendant was guilty beyond a reasonable doubt of the murder of Odessa Harris. (*Jackson v. Virginia* (1979), 443 U.S. 307, 319, 61 L. Ed. 2d 560, 573, 99 S. Ct. 2781, 2789.) However, as stated in *Fahy v. Connecticut* (1963), 375 U.S. 85, 86, 11 L. Ed. 2d 171, 173, 84 S. Ct. 229, 230, "[w]e are not concerned here with whether there was sufficient evidence on which the petitioner could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." The record in this case indicates that the trial court expressly considered the codefendant's confession in reaching its verdict. Thus, the admission of the codefendant's confession was not harmless, but requires reversal of defendant's conviction with respect to the murder of Odessa Harris and remand of this cause for a new trial. Accordingly, this cause is remanded to the circuit court of St. Clair County and defendant is granted a new trial with respect to the murder of Odessa Harris.

■ Finally, this court finds that it must remand this cause for resentencing with respect to defendant's conviction for the murder of Mattie Darden. The trial court specifically relied upon the now vacated conviction in imposing a life term of imprisonment. While this court does not consider such a sentence an abuse of the trial court's discretion, resentencing is necessary in light of the vacation of the other conviction.

For the foregoing reasons, the judgment of the circuit court of St. Clair County is affirmed in part, reversed and remanded in part, and remanded with directions in part.

Affirmed in part; reversed and remanded in part; and remanded with directions in part.

HARRISON, P.J., and KARNS, J., concur.