# UNITED STATES

v.

**Michael D. SENNETT, 426 17 2955, Private First Class (E–2), U.S. Marine Corps.**

**NMCM 93 02342.**

U.S. Navy–Marine Corps Court of Criminal Appeals.

Sentence Adjudged 4 Sept. 1992.

Decided 15 May 1995.

LT David P. Sheldon, JAGC, USNR, Appellate Defense Counsel.

LT Robin W. Sardegna, JAGC, USNR, Appellate Government Counsel.

Before ORR and REED, Senior Judges, and T.D. KEATING, J.

KEATING, Judge:

The appellant was tried before a panel of officers and was convicted, contrary to his pleas, of sodomy and adultery in violation, respectively, of Articles 125 and 134 of the Uniform Code of Military Justice [UCMJ], 10 U.S.C. §§ 925, 934 (1988). He was sentenced to reduction to pay grade E–1 and to be discharged from the naval service with a bad-conduct discharge. The convening authority approved the sentence as adjudged and forwarded the record of trial for our review under Article 66(c), UCMJ, 10 U.S.C. § 866(c) (1988).

The appellant raises seven assignments of error. The first of these concerns the admissibility of the appellant's written statement in which he provided detailed information admitting to the offenses charged. The written statement was preceded by an oral statement, which the Government did not offer into evidence and the admissibility of which was not challenged at trial. We agree with the appellant that the military judge erred in not suppressing the written statement because the Government failed to meet its burden of proving that the statement was not unlawfully induced. We also hold that, even though there is substantial evidence of guilt independent of the statement, we cannot say that there is no reasonable possibility that the statement did not contribute to the member's findings of guilty; therefore, the error was not harmless. Because we set aside the findings of guilty and the sentence, we need not address the appellant's remaining assignments of error.

The relevant facts in this case center around the events that occurred after the appellant was summoned to the Naval Investigative Service [NIS] (now the Naval Criminal Investigative Service) Office at Twentynine Palms, California, in response to a complaint of rape reported to NIS by personnel from the base hospital. After being advised

he was suspected of rape and given his Article 31, UCMJ, rights, the appellant, in a brief conversation with the investigator, admitted having sexual relations with the complainant, the wife of a senior enlisted Marine, at her off-base residence the previous night but claimed it was entirely consensual.

About 3 hours later the appellant signed a seven-page, written statement that, along with the testimony of a co-actor, formed the basis of his conviction. According to the appellant, he was initially reluctant to provide a written statement. He was then shown a "booking order" that could be used to put him in the county jail and was told he had a choice between either making a written statement or asking for a lawyer and being taken to the county jail. Record at 111. Although civilian authorities were presumably advised of the situation, they did not participate in the questioning.

■ The military judge denied the defense motion to exclude the written statement. Record at 136. He then went on to find that both the oral and written statements were voluntary. *Id.* While we are generally inclined to give deference to the essential findings of the military judge concerning the admissibility of pretrial confessions, we are not bound by them. *United States v. Jones,* 34 M.J. 899, 905 (N.M.C.M.R.1992); UCMJ art. 66(c). The defense motion to suppress the accused's confession in this case was denied by the military judge based on his findings that the accused was not threatened with jail, either in words or by being shown a document. Record at 136.

■ An involuntary statement may not be received in evidence against an accused who made the statement if the accused makes either a timely motion to suppress or a timely objection to the evidence. Mil.R.Evid. 304(a). A statement is "involuntary" if, *inter alia,* it is obtained "through the use of coercion, unlawful influence or unlawful induce-

ment." Mil.R.Evid. 304(c)(3). A threat to prosecute a suspect for a criminal offense unless he makes a statement is improper, and will render inadmissible a statement resulting from such a threat. *United States v. Barksdale,* 17 C.M.A. 500, 38 C.M.R. 298 (1968); Mil.R.Evid. 304(c)(3) analysis, Manual for Courts–Martial, United States, 1984, app. 22, A22–10.

This Court has previously expressed its concern about a threat to deprive a suspect of his liberty and subject him to prosecution by civilian authorities if he did not cooperate. *See United States v. Bubonics,* 40 M.J. 734 (N.M.C.M.R.1994), *certificate for review filed,* 41 M.J. 355 (C.M.A.1994). In the case now before us, the investigators acknowledged both having the forms used by the local sheriff's office to confine prisoners in the county jail and filling out such a form in the name of the appellant. Record at 129–132. They also testified that it was their decision whether to put the appellant in the county jail. "It was our case and we made the decision, we made the determination, we had the option to book them into the Morongo Basin Jail and we exercised that option." *Id.* at 129. The appellant was actually incarcerated in the county jail after he executed his written statement.

This unusual and apparently irregular practice of investigators delivering servicemembers to the county jail without a warrant and a written agreement[1] lends critical support, in our view, to the appellant's testimony. The practice revealed by the testimony of these investigators also raises an issue of naval personnel being used improperly to support civilian law enforcement. *See* 10 U.S.C. § 371(a) (1994); Department of Defense [DoD] Directive 5525.5 (15 Jan 86), "DoD Cooperation With Civilian Law Enforcement Officials;" Secretary of the Navy Instruction 5730.7B (28 Mar 88), "Cooperation With Civilian Law Enforcement." We

---

1. We take notice of the requirements of Article 14 of the UCMJ, 10 U.S.C. § 814 (1988), Article 0822 of U.S. Navy Regulations, and sections 0603 and 0607 of the Manual of the Judge Advocate General concerning the delivery of military servicemembers who have been accused of committing an offense under the laws of a civilian jurisdiction to civil authorities. We know of

nothing that permits investigators to decide whether members of the armed forces on a military installation shall be removed from that installation and turned over to civilian authorities or to dispense with the requirement for a proper warrant and a written agreement guaranteeing return of the servicemember before such a delivery is made.

will, however, limit our decision in this case to a *de novo* review of the defense motion to suppress the appellant's confession.

■ The appellant's testimony on the voluntariness issue is straightforward and concise. He acknowledged having been given his Article 31 rights and waiving these rights by admitting in a brief conversation to having had consensual sexual relations with the complainant. He then recounts being confronted with a "booking order" and told that a written statement was needed or he could ask for a lawyer and be taken to the county jail. Record at 111. He then made the written statement introduced against him at trial. The investigators denied having told the appellant he was going to jail unless he made a written statement, but admitted talking to the appellant about going to jail after the statement had been signed.

The Government's lead investigator testified initially on a separate but related motion that the issue of jail did come up at some point in his discussion with the appellant but that he couldn't recall specifically at what point. He also said it was possible the appellant was told he would be put in jail absent information that there was no rape. The witness lastly confirmed that, at the conclusion of his interview with the appellant, he told him he would recommend he not go to jail. Record at 71. In subsequent testimony on a different issue, the same witness attempted to explain his earlier testimony by saying it was possible they had discussed some type of confinement but asserted that he had avoided the word "jail." Record at 94.

The same witness also testified that he told the appellant what he told most suspects: "[I]f they cooperate with me, provide a statement to NIS, and cooperate in the investigation and give their side of the story, I'll let that information be known to the command and ... it's usually in their favor to do that." Record at 87–88. He denied telling the appellant at any time that he was going to jail if he did not make a statement. He said if the subject of jail came up, which he didn't recall, his normal procedure was to avoid talking about jail until the interview was finished. He did recall telling the appellant after the statement had been signed that he would recommend he not be sent to jail. Record at 88.

We find these acknowledged references to the possibility that the appellant could be sent to a civilian jail in the absence of any request by civilian authorities, combined with the NIS investigators' possession of a civilian booking form filled out with the appellant's name, and the investigators' belief that they had unilateral authority to turn the appellant over to civilian authorities to be persuasive evidence in support of the appellant's version of his interrogation. Considering the totality of the circumstances surrounding the taking of his written statement, we conclude that the Government did not carry its burden of establishing by a preponderance of the evidence that the confession was not obtained through the act of coercion, unlawful influence, or unlawful inducement.

■ Having determined that the appellant's written confession should not have been admitted, we must also decide whether its erroneous admission was prejudicial to the appellant in light of the other evidence admitted at trial. *See Chapman v. California,* 386 U.S. 18, 23–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967); *Fahy v. Connecticut,* 375 U.S. 85, 86–87, 84 S.Ct. 229, 230–231, 11 L.Ed.2d 171 (1963). The confession contained very detailed and persuasive evidence both of the sodomy and of the adultery. The remaining evidence against the appellant came solely from the appellant's co-actor, who testified under a grant of immunity and who had received non-judicial punishment for his participation in the events.

Even if we give the co-actor's testimony substantial weight approximately equal to that of the appellant's lengthy and detailed confession, we cannot say the appellant's confession was " 'unimportant in relation to everything else the jury considered.' " *United States v. Palacios,* 37 M.J. 366, 368 (C.M.A. 1993) (quoting *Yates v. Evatt,* 500 U.S. 391, 403, 111 S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991)). There is clearly a " 'reasonable possibility the evidence complained of *might have contributed* to the conviction.' " *Id.* (quoting *Fahy,* 375 U.S. at 86–87, 84 S.Ct. at

230–231). The error in admitting the confession was, therefore, not harmless beyond a reasonable doubt. *See also Bubonics,* 40 M.J. at 741.

Accordingly, the findings of guilty and the sentence are set aside. A rehearing may be ordered.

Senior Judge ORR and Senior Judge REED concur.