COURT OF APPEALS OF VIRGINIA


Present:  Judges Coleman, Annunziata and Bumgardner
Argued at Salem, Virginia


SOMCHITH XAYAPHETH

MEMORANDUM OPINION* BY
v.    Record No. 0524-99-3        JUDGE RUDOLPH BUMGARDNER, III
                                    MARCH 14, 2000
COMMONWEALTH OF VIRGINIA


FROM THE CIRCUIT COURT OF ROCKINGHAM COUNTY
Porter R. Graves, Jr., Judge

Danita S. Alt for appellant.

Shelly R. James, Assistant Attorney General
(Mark L. Earley, Attorney General; Amy L.
Marshall, Assistant Attorney General, on
brief), for appellee.


A jury convicted Somchith Xayapheth of first degree murder

and use of a firearm in the commission of murder.  The defendant

argues the trial court erred in denying his motion to suppress

his confession.  He contends (1) that the police did not

properly advise him of his Miranda rights, and (2) that he

invoked his right to counsel during the interrogation.

It is undisputed that the police advised the defendant of

his Miranda rights in English.  They also advised him in Laotian

of all rights except that anything he said would be used against

him.  The defendant contends the advice was insufficient because

* Pursuant to Code § 17.1-413, recodifying Code
§ 17-116.010, this opinion is not designated for publication.

Laotian is his native tongue, and though he had lived in the United States for seventeen years, he did not understand English well enough to knowingly and intelligently waive his rights. The trial court conducted thorough and careful reviews of the audio recording of the interview and of the transcripts made from the recording. The interview was a complex exchange between the defendant, the police investigator, and the translator during which the conversation by and with the defendant shifted between Laotian and English.

The trial court found that the defendant understood English sufficiently to comprehend the Miranda rights as explained and that the defendant knowingly and intelligently waived those rights. The trial court also found that the defendant waived his right to have counsel present. The trial court had the opportunity to speak with the defendant and observe him talking with others. We cannot conclude that the trial court erred in finding that the defendant sufficiently understood the English language to comprehend his rights according to the Miranda warnings and that he knowingly and voluntarily waived those rights. If any error was committed, it was harmless beyond a reasonable doubt. The evidence, absent the confession, was overwhelming and established the defendant's guilt conclusively. Accordingly, we affirm the convictions.

The defendant called the 911 dispatcher from his home and stated in English, "I kill my wife." After the dispatcher

-

obtained an interpreter, the defendant advised that his wife had met another man and he was tired of talking to her about it. She wanted to leave him, but he refused to let her go. The defendant said that he shot his wife, she was dead, and the gun was still in the house. The police arrived at the defendant's home during the call. They found him standing at the front door with blood on his shirt. His wife was lying on the bedroom floor, and a gun was on the bed.

The wife had three separate gunshot wounds. One, fired at close range, went through her right cheek and perforated her larynx. A bullet was extracted from her left shoulder. She also suffered a long grazing wound across her shoulder blades. The medical examiner found fresh defensive injuries on her arms, the backs of her hands and forearms, and on her back and abdomen.

The gun found at the scene functioned normally. The defendant's palm print was on the gun, and the bullet extracted from the wife's shoulder was fired from that gun. A gunshot residue test revealed that the defendant had recently fired a gun.

Two days before the murder, the defendant told a shop owner known to the family that his wife had a boyfriend and he "wanted to kill his wife and he kill himself." Two to three weeks earlier, the wife told her sister the defendant threatened her, pushed her into a towel rack, and put a knife to her neck. When

-

the sister confronted the defendant, he admitted the incident but said he would not threaten her anymore with a knife or gun. The couple's son testified that his parents fought every week for the two months preceding the shooting, that the defendant hit his mother and threatened her with knives, and that he injured her about once a month. A month before the shooting, the defendant's supervisor at work heard him say his wife was "no good. I kill her. I kill her." The supervisor observed black and blue marks across the wife's back, which the wife told her came from the defendant's beating her.

During his interview at the police station, the defendant admitted killing his wife by shooting her twice with a black, small caliber gun. He shot her because she had a boyfriend and was going to leave him. During the shooting she had scratched him, but she did not have a weapon.

At trial, the defendant testified the shooting was an accident. He believed his wife began an affair in 1995, but he refused to let her leave him. After arguing and crying for an hour, he took out his gun intending to shoot himself. While he had his finger on the trigger, the wife fought him for the gun, and it fired twice, one shot after the other. Later, the defendant testified that after the first shot, they struggled, and then she fell to the floor. He told his kids "your mother is dead" and cried in front of them. He also told the kids, "she was messing around with someone else. I killed her."

-

The harmless error doctrine applies on review of a conviction challenged on Fifth and Sixth Amendment grounds.  See Arizona v. Fulminante, 499 U.S. 279, 306-10 (1991) (applying harmless error standard to erroneously admitted confession); Milton v. Wainwright, 407 U.S. 371, 372-73 (1972).  "[B]efore a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt."  Chapman v. California, 386 U.S. 18, 24 (1967).  The error is reversible, however, "if there is a reasonable possibility that the evidence complained of might have contributed to the conviction."  Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963).  See Lilly v. Commonwealth, 258 Va. 548, 552-53, 523 S.E.2d 208, 210 (1999) (reversible error where evidence did not clearly establish, absent erroneously admitted evidence, that the defendant was the triggerman).

Dearing v. Commonwealth, ___ Va. ___, ___ S.E.2d ___ (2000), stated factors a court must consider when determining constitutional harmless error.  They are:  the importance of the tainted evidence in the prosecution's case; whether the evidence was cumulative; the presence or absence of evidence corroborating or contradicting the tainted evidence on material points; and the overall strength of the prosecution's case.  See id. at ___ , ___ S.E.2d at ___.

The Commonwealth had to prove beyond a reasonable doubt that the defendant maliciously killed his wife and that the

-

killing was "willful, deliberate, and premeditated." Code § 18.2-32. The defendant was at the murder scene with blood on his shirt when the police arrived. There is no indication of remorse or contrition. The wife had three gunshot wounds and fresh defensive injuries on her back, abdomen, and arms. The bullet extracted from her had been fired from the gun found on the bed. The defendant's palm print was on that gun, and the residue test showed that he had recently fired a weapon. The defendant told the 911 dispatcher that he had shot and killed his wife because she was seeing another man and was going to leave the defendant.

Two days before the murder, the defendant told an acquaintance that he wanted to kill his wife. Two to three weeks before the murder, he admitted to threatening his wife with a knife. Approximately a month before the murder, the defendant told his supervisor that he would kill his wife. The defendant's son testified that the parties argued weekly, the defendant hit his mother, and he injured her about once a month. The son also saw the defendant threaten his mother with a knife.

The defendant's confession provides no further admission than what he told the 911 dispatcher when first reporting the shooting. The confession was only cumulative of other evidence. It supplied no additional detail and was less specific than the other evidence. What evidence the confession corroborated was more fully corroborated by other evidence, much of which was

-

uncontradicted scientific evidence.  The confession did not contradict the defendant's testimony at trial that the shooting was an accident.

We conclude that any error in admitting the confession was harmless beyond a reasonable doubt.  The Commonwealth's other evidence overwhelmingly proved the defendant committed a willful, deliberate, and premeditated act, and the wife's fresh defensive injuries belie his theory that her death was an accident.  Accordingly, we affirm the convictions.

<u>Affirmed.</u>