WELCH, Judge,
dissenting.
The majority holds in its unpublished memorandum that no reversible error occurred when the trial court permitted Detective Ed McGuffie to testify regarding allegations of Ralph Tucker’s molestation of two other minor victims, V.N. and C.C., even though those allegations bore no relevance to the case being tried here, which involves allegations that Tucker had sexual intercourse with KM. before K.M. was 12 years old. The majority holds, first, that “the State elicited the testimony from McGuffie to establish what led to the investigation of [Tucker] and how law-enforcement officers subsequently identified K.M. as a victim,” so the testimony did not violate Rule 404(b), Ala. R. Evid. The majority also holds that because the statements were offered to show how Det. McGuffie developed Tucker as a suspect and how K.M. was discovered as a victim in this case, the statements were also admissible because they were not hearsay. I disagree with both of those reasons. The detective’s testimony was clearly hearsay and was not admissible under Rule 404(b). The trial court should have sustained Tucker’s objections; the prejudice that resulted from the admission of the testimony about additional incidents of molestation involving Tucker was substantial. Tucker’s conviction should be reversed, and I dissent from the unpublished memorandum affirming it.
The majority describes Det. McGuffie’s testimony about the other minor victims, as follows:
“The State presented evidence indicating that, on June 30, 1992, V.N. and C.C. were brought to the Center Point substation of the Jefferson County Sheriffs Department by their mothers and their mothers filed reports alleging that their daughters had been molested. Lieutenant Ed McGuffie testified that, in 1992, he was in charge of the Youth Services division of the Jefferson County Sheriffs Department; that V.N., C.C., and their mothers were referred to him; that V.N. and C.C. were interviewed at the Prescott House; that he was present during the interview; that the incidents involving V.N. and C.C. occurred a couple of weeks before the interview; that there was an indication that photographs had been taken during the incidents; that C.C. indicated that the person who molested her was known as ‘Fred’; that his investigation indicated that the person who molested C.C. lived next door to her; and that he was able to determine that the incidents involving V.N. and C.C. occurred at [address redacted]. He also testified that the went to that address; that he ran a tag registration on a vehicle at the residence, and it came back to [Tucker]; that he also determined that the electricity at the residence was in the [Tucker’s] name; that he determined that [Tucker’s] date of birth was December 18, 1943; that, based on the information he received during the interview at the Prescott House, he obtained a search warrant for the [Tucker’s] house to look for pictures and tapes that had been described by V.N. and C.C. ...”
*795 I note that Tucker did not object when Det. McGuffie testified that Y.N.’s mother and C.C.’s mother had reported that the girls had been molested, and I further note that the girls were interviewed. Tucker objected on hearsay grounds when the State sought to elicit testimony regarding the substance of the interviews involving V.N. and C.C. Tucker’s failure to object to the detective’s initial testimony did not result in a waiver of this issue, however, because that initial testimony did not indicate that Tucker was involved with V.N. and C.C., or that he was a perpetrator of any crimes against them. The detective’s subsequent testimony, to which Tucker did object, linked Tucker to the allegations involving V.N. and C.C. Therefore, Tucker’s objections to Det. McGuffie’s subsequent testimony should have been sustained, and the testimony was erroneously admitted.
The State initially argued to the trial court at a pretrial hearing that testimony about V.N. and C.C. was proper because, it said, “the facts that surround those cases we feel are admissible in this case to show motive; an unnatural sexual desire for children by this defendant” (R. 12), and it argued that there was “no way to get to our case without explaining the fact scenario that led up to the discovery of the videotape” involving other victims (R. 11). Although testimony about allegations of sexual abuse involving other minor victims might have been admissible under Rule 404(b), the majority finds:
“[Vjiewing the arguments of counsel in context of the entire trial, it is obvious that the State actually offered McGuf-fie’s testimony regarding the allegations to show how [Tucker] was developed as a suspect and how the victim was discovered in this case rather than to show that the allegations of V.N. and C.C. were in fact true and that those allegations showed his motive for committing the offense against K.M.”
If the State did not offer the detective’s testimony about the collateral acts involving V.N. and C.C. as evidence of motive— and I agree with the majority that it appears that the State did not do so — then the testimony was not admissible under Rule 404(b) as an exception to the general rule excluding evidence of collateral conduct. The testimony of Det. McGuffie consisted of hearsay and was inadmissible for the purpose of proving collateral misconduct.
Because the testimony was not admitted as Rule 404(b) evidence regarding motive, the trial court’s instruction to the jury about Rule 404(b) evidence was irrelevant and did not in any way minimize or eliminate the trial court’s error in allowing the testimony about V.N. and C.C. Tucker did not object to the jury instruction, however, so this cannot serve as an additional ground of error for reversal here.
The testimony about V.N.’s and C.C.’s allegations of molestation was clearly hearsay and was inadmissible. Rule 801(c), Ala. R. Evid., defines hearsay as “a statement, other than one made by the declar-ant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.” The majority holds that the testimony was definitionally not hearsay because, it reasons, the testimony was offered for a purpose other than the truth of the matter asserted, that is, it was offered to show how Det. McGuffie developed Tucker as a suspect and how K.M. was discovered as a victim in this case. The majority cites T.D.T. v. State, 745 So.2d 885, 894 (Ala.Crim.App.1998), and Robitaille v. State, 971 So.2d 43, 59 (Ala.Crim.App.2005), in support of its holding. Those cases are distinguishable, however, because the collateral-act testimony in those cases did not introduce evidence of *796 other crimes involving other victims in other cases. I do not believe that the caselaw allowing the. admission of testimony about actions taken as part of an investigation was ever intended to be so broad and permissive as to allow the admission of unnecessary testimony about crimes against other victims.
The Alabama Supreme Court has, in fact, urged caution when admitting such testimony. In Ex parte Melson, 775 So.2d 904 (Ala.2000), the Court examined testimony of a police officer regarding a statement from Melson’s codefendant, Peraita. The Court stated:
“The State' argues that the answer regarding [the codefendant’s] statement was elicited from Officer Ragan in order to explain why the police officer seized Melson’s shoes, not to prove that Melson was wearing a particular pair of shoes. We disagree with the State’s argument, but, based on the facts presented in this case, we find no reversible error. We believe [the codefendant’s] statement, elicited from Officer Ragan, falls within the definition of ‘hearsay’ at Rule 801(c), Ala. R. Evid., and that it was, therefore, inadmissible; we nevertheless conclude that the circuit court’s ruling sustaining Melson’s objection,[2] followed by its instructing the jury to disregard the answer and its questioning the jurors to ascertain if any of them would have a problem- following the court’s instructions, removed any possible prejudice suffered by Melson.
Ex parte Melson, 775 So.2d at 906-07.
Although the State argued to the trial court that there was “no way to get to our case without explaining the fact scenario that led up to the discovery of the videotape” (R. 11), this is certainly not true. The prosecutor here could have asked Det. McGuffie questions like many prosecutors have asked other officers, that is, whether based on certain investigative leads, he had developed Tucker as a suspect. Det. McGuffie could have then testified that he had obtained a search warrant for Tucker’s residence and found a videotape portraying the victim, and found the victim’s address.
In this case, the prosecutor sought to admit details of the interviews with V.N. and C.C. at Prescott House without calling those victims to testify. When the trial court initially refused to allow testimony about details of the interviews, the prosecutor then sought to admit the same testimony on the ground that it explained how Det. McGuffie developed Tucker as a suspect. As the Alabama Supreme Court found in Ex parte Melson, that testimony was hearsay and was inadmissible. Det. McGuffie’s testimony about how Tucker became a suspect was not at issue in the case, and even if it were at issue, the prosecutor could have asked other questions to get the same information — questions that did not implicate Tucker in crimes against other minor victims. The Melson Court found no reversible error because the trial court sustained Melson’s objections and it instructed the jury to disregard the answer, then questioned the jurors to determine whether any of them could not follow the court’s instructions, thus removing any possible prejudice to Melson. The trial court here did not sustain Tucker’s objections and it did not issue a cautionary instruction to the jury *797 to disregard the testimony. The jury instruction involving collateral-act evidence and Rule 404(b) was not sufficient to eliminate the error here.
Finally, and contrary to the majority’s assertion, the error in the admission of Det. McGuffie’s testimony cannot be considered harmless. Rule 45, Ala. R.App. P. In holding that any error in the admission of the testimony about Tucker’s alleged sexual abuse of two other minor victims was harmless, thé majority’s own discussion highlights the conflicting evidence presented at trial and demonstrates that the harmless-error rule does not apply here.
Tucker was convicted of first-degree rape, § 13A-6-61(a)(3), Ala.Code 1975, and that charge required proof that K.M. was below the age of 12 years when K.M. and Tucker had sexual intercourse. K.M.’s age at the time she and Tucker had intercourse was therefore crucial to Tucker’s conviction. The majority notes that Tucker admitted that he had intercourse with K.M., but the majority also notes that Tucker testified that he did not have intercourse with K.M. until after she had reached the age of 13 years. K.M. testified that Tucker had sexual intercourse with her hundreds of times before she was 13 years old. Thus, the conflicting testimony about K.M.’s age presented a credibility question for the jury. If the jury believed Tucker’s testimony, an acquittal would have been in order because Tucker was not charged with second-degree rape, which would have required proof that Tucker had sexual intercourse with K.M. while she was more than 12 years old but less than 16 years old. § 13A-6-62(a)(l), Ala.Code 1975. The majority also discusses a videotape admitted into evidence and played for the jury; that videotape depicted a variety of images of K.M. and Tucker and some of the images included the two having sexual intercourse. The majority acknowledges, however, that “[t]he victim’s exact age at the time of each of the various incidents is not completely clear.” KM.’s age — an element of the crime for which Tucker was convicted — was clearly disputed throughout trial and was an issue properly placed before the jury for its resolution. I believe that there is a reasonable possibility that testimony that Tucker had previously sexually abused young girls could have contributed to Tucker’s conviction.
Det. McGuffie testified that on June 30, 1992, V.N. and C.C. were brought' to the Center Point substation of the Jefferson County Sheriffs Department 'by their mothers; he testified that their mothers filed reports alleging that their daughters had been molested. He also testified that at that time C.C. was 7 years old, and V.N. was 11 years old. This testimony from Det. McGuffie about Tucker’s alleged sexual abuse of two minor victims — particularly when the testimony included their ages and details about the victims’ mothers reporting the alleged crimes to the police and the investigation that then followed— would have seriously undermined Tucker’s credibility, and the admission of that testimony cannot be deemed harmless. Although the majority has acknowledged the conflict in the evidence, it has essentially determined that the victim’s testimony was more credible and that Tucker would have been convicted even if the testimony had not been admitted. I believe that the majority has failed to properly analyze the issue under Rule 45, Ala. RApp. P. Even if the evidence against Tucker had been overwhelming — and as noted above, it was not — overwhelming evidence of guilt does not render prejudicial error harmless. See, e.g., Ex parte Phillips, 962 So.2d 159 (Ala.2006). The relevant question in determining whether the error in the admission of the testimony was harmless is *798 whether Tucker’s substantial rights were probably injuriously affected by the admission of the improper testimony.
When the Alabama Supreme Court in Ex parte Baker, 906 So.2d 277 (Ala.2004), reversed a capital-murder conviction and sentence of death based on its determination that this Court erred when it held that the harmless-error rule excused the admission of hearsay evidence about a prior incident of domestic abuse, the Alabama Supreme Court stated, in part:
“The issue before us is the existence or nonexistence of a reasonable possibility that the erroneously admitted hearsay might have ¡prompted the jurors to find intent to terrorize, and thus to find guilt of kidnapping in the first degree, and thus to find guilt of capital kidnap-murder.
“‘We are not concerned here with whether there was sufficient evidence on which the [defendant] could have been convicted without the evidence complained of. The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction.’
“Fahy v. Connecticut, 375 U.S. 85, 86-87 (1963).
“ ‘[T]he original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in Fahy v. State of Connecticut about “whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction” and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our Fahy case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt. While appellate courts do not ordinarily have the original task of applying such a test, it is a familiar standard to all courts, and we believe its adoption will provide a more workable standard, although achieving the same result as that aimed at in our Fahy case.’
“Chapman v. California, 386 U.S. 18, 24 (1967) (footnote omitted).”
906 So.2d at 287-88.
For all the foregoing reasons, I disagree with the majority’s determination that admission of hearsay testimony regarding Tucker’s collateral acts of sexual abuse against other minors was, at most, harmless error. I believe that Tucker’s conviction and sentence should be reversed. Therefore, I respectfully dissent.

“2 We urge vigilance in evaluating any offer of testimony about an out-of-court declaration 'not for the truth of the matter asserted.' The admissibility of such testimony depends on its being relevant to a proper issue in the case. The first inquiry should be: 'if the out-of-court declaration is not offered for its truth, is whatever the declaration does tend to prove really at issue in the particular proceeding?’ ”