IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-09-00338-CV

 

Forrest Property Management, Inc. 

and Charles Michael Forrest,

                                                                                    Appellants

 v.

 

William Clinton Forrest,

                                                                                    Appellee

 

 



From the 18th District Court

Johnson County, Texas

Trial Court No. C200900357

 



ORDER OF
REFERRAL TO MEDIATION










 

            In their docketing statement filed
with this Court on October 21, 2009, appellants request that this appeal be
referred to mediation.

            The Legislature has provided for the
resolution of disputes through alternative dispute resolution (ADR)
procedures.  See Tex. Civ. Prac.
& Rem. Code Ann. §§ 154.001-154.073 (Vernon 2005).  The policy behind
ADR is stated in the statute: “It is the policy of this state to encourage the
peaceable resolution of disputes . . . and the early settlement of pending
litigation through voluntary settlement procedures.”  Id. § 154.002
(Vernon 2005).  Mediation is a form of ADR.  Mediation is a mandatory but
non-binding settlement conference, conducted with the assistance of a
mediator.  Mediation is private, confidential, and privileged.

        We find that this appeal is appropriate
for mediation.  See id. § 154.021(a) (Vernon 2005); 10th Tex. App. (Waco) Loc. R. 9.

        The parties are ordered to confer and
attempt to agree upon a mediator.  Within fourteen days after the date of this
Order, appellants are ordered to file a notice with the Clerk of this Court
which either identifies the agreed-upon mediator or states that the parties are
unable to agree upon a mediator.  If the notice states that the parties are
unable to agree upon a mediator, this Court will assign a mediator.

        Mediation must occur within thirty days
after the date the above-referenced notice agreeing to a mediator is filed or,
if no mediator is agreed upon, within thirty days after the date of the order
assigning a mediator.

        No less than seven calendar days before
the first scheduled mediation session, each party must provide the mediator and
all other parties with an information sheet setting forth the party’s positions
about the issues that need to be resolved.  At or before the first session, all
parties must produce all information necessary for the mediator to understand
the issues presented.  The mediator may require any party to supplement the
information required by this Order.

        Named parties must be present during the
entire mediation process, and each corporate party must be represented by a
corporate employee, officer, or agent with authority to bind the corporate
party to settlement.

        Immediately after mediation, the mediator
must advise this Court, in writing, only that the case did or did not settle
and the amount of the mediator’s fee paid by each party.  The mediator’s fees
will be taxed as costs.  Unless the mediator agrees to mediate without fee, the
mediator must negotiate a reasonable fee with the parties, and the parties must
each pay one-half of the agreed-upon fee directly to the mediator.

        Failure or refusal to attend the mediation
as scheduled may result in the imposition of sanctions, as permitted by law.  

        Any objection to this Order must be filed
with this Court and served upon all parties within ten days after the date of
this Order, or it is waived.

        We
refer this appeal to mediation. 

PER
CURIAM

Before
Chief Justice Gray,

        Justice
Reyna, and

        Justice
Davis

Order
issued and filed October 28, 2009

Do
not publish






hear me so I backed off and started to walk to the car. I did not see Troy
do anything. We left went to Albertson I told Eric to go there cause I could probably get
away with it. Me and Troy went inside got to 40oz put them down our pants and went outside
got in the car and left. Cops pulled us over we put the alcohol in the bottom of the seat we
got tickets. I had to walk home from Albertsons. When we got caught Charles was not with
us he walked off or something. This all happened in Erics car a maroon grand am.”
      The statement was offered and admitted into evidence after Kahanek asserted his constitutional
right not to testify. The court ruled the statement fell under one of the hearsay exceptions, i.e.,
a “statement which was at the time of its making . . . so far tended to subject the declarant to . .
. criminal liability . . . that a reasonable person in declarant’s position would not have made the
statement unless believing it to be true. In criminal cases, a statement tending to expose the
declarant to criminal liability is not admissible unless corroborating circumstances clearly indicate
the trustworthiness of the statement.” Tex. R. Evid. 803(24); Bingham v. State, 987 S.W.2d 54
(Tex. Crim. App. 1999).
The Confrontation Clause
      Shilling’s single issue on appeal is that his Sixth Amendment right to confront the witnesses
against him was violated when he was not allowed to cross-examine Kahanek. U.S. Const.
amend. VI. We review a trial court’s decision to admit evidence over objection for an abuse of
discretion, which we will not find if the decision was in the “zone of reasonable disagreement.” 
E.g., Montgomery v. State, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990).
      The statement contains a mixture of self-incriminating and non-self-incriminating declarations. 
The parts about what Shilling did are not necessarily incriminating as to Kahanek. Under a
Confrontation Clause analysis, we find the entire statement was inadmissible. In Lilly v. Virginia,
the Court described the test used to determine whether hearsay violates the Confrontation Clause. 
527 U.S. 116, 124-25, 119 S.Ct. 1887, 1894, 144 L.Ed.2d 117 (1999). To avoid a violation of
the Confrontation Clause, hearsay evidence must fall within a “firmly rooted hearsay exception,”



or must contain “particularized guarantees of trustworthiness” such that cross-examination would
probably add little, if anything, to the reliability of the evidence. Id. (citing Ohio v. Roberts, 448
U.S. 56, 66, 100 S.Ct. 2531, 2539, 65 L.Ed.2d 597 (1980)).
      Hearsay which falls into the “firmly rooted” category is that “whose conditions have proven
over time ‘to remove all temptation to falsehood, and to enforce as strict an adherence to the truth
as would the obligation of an oath’ and cross-examination at a trial.” Id., 527 U.S. at 126, 119
S.Ct. at 1895 (citing Mattox v. United States, 156 U.S. 237, 243, 15 S.Ct. 337, 340, 39 L.Ed.2d
409 (1895)). Lilly referred to Bruton v. United States for the proposition that while a defendant’s
confession is one type of statement against penal interest and admissible against him, use of a
confession as evidence against a co-defendant is not justified because such confessions are not
within a firmly rooted exception to the hearsay rule for Confrontation Clause purposes. Id., 527
U.S. at 128, 119 S.Ct. at 1896 (citing Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20
L.Ed.2d 476 (1968)). The Court found that, consistent with the underlying principles in Bruton,
a confession made to police by an accomplice which incriminates the defendant is inadmissible
under general Confrontation Clause analysis.


 Id., 527 U.S. at 131, 119 S.Ct. at 1897.
      The Court next turned to the “residual admissibility test,” i.e., whether a hearsay statement,
by its content and the circumstances under which it was given, is inherently trustworthy. Id., 527
U.S. at 135-36, 119 S.Ct. at 1899-1900. This test recognizes that rigid adherence to the Clause’s
standard for admissibility “might in an exceptional case exclude a statement of an unavailable
witness that is incontestably probative, competent, and reliable, yet nevertheless outside of any
firmly rooted hearsay exception.” Id., 527 U.S. at 136, 119 S.Ct at 1900. The Court noted:
It is highly unlikely that the presumptive unreliability that attaches to accomplices' confessions
that shift or spread blame can be effectively rebutted when the statements are given under
conditions that implicate the core concerns of the old ex parte affidavit practice--that is, when
the government is involved in the statements' production, and when the statements describe
past events and have not been subjected to adversarial testing.

Id. The court also reaffirmed an earlier holding that precludes the use of corroborating evidence
to support a “particularized guarantee of trustworthiness.” Id. 527 U.S. at 137-38, 119 S.Ct. at
1900 (citing Idaho v. Wright, 497 U.S. 805, 110 S.Ct. 3139, 111 L.Ed.2d 638 (1990)). Rather,
the hearsay must possess indicia of reliability by virtue of its inherent trustworthiness. Id., 527
U.S. at 138, 119 S.Ct. at 1901.
      Because Kahanek’s statement does not fall with a well rooted exception to the hearsay rule,
and because the State has not demonstrated the inherent trustworthiness of the statement to satisfy
the demands of the Confrontation Clause, the statement fails the Roberts test. Thus, the court
erred in admitting it.
Harm Analysis
      When an error of constitutional proportion has occurred, we must reverse unless we determine
beyond a reasonable doubt that the error did not contribute to the conviction or punishment. Tex.
R. App. P. 44.2(a); Chapman v. California, 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705
(1967). The Court of Criminal Appeals described this review in Harris v. State, 790 S.W.2d 568
(Tex. Crim. App. 1989). Citing Fahy v. Connecticut, 375 U.S. 85, 88, 84 S.Ct. 229, 231, 11
L.Ed.2d 171 (1963), the Harris court said: “We are not concerned here with whether there was
sufficient evidence on which the petitioner could have been convicted without the evidence
complained of. The question is whether there is a reasonable possibility that the evidence
complained of might have contributed to the conviction. To decide this question, it is necessary
to review the facts of the case and the evidence adduced at trial.” Harris, 790 S.W.2d at 585. 
The goal is to examine all the evidence “solely to trace the impact of the error. The untainted
evidence is not to be weighed in its own right, nor is it to be examined to see if it is cumulative
with the tainted evidence.” Id.
      Based on Harris, in assessing harm we do not review the evidence against the defendant at
trial, excluding the objected-to evidence, to determine if the evidence was sufficient to support a
conviction. That would place us in the shoes of the jury, substituting ourselves for the jury as
fact-finder. Rather, our inquiry is whether we can say beyond a reasonable doubt that the
erroneously-admitted evidence did not prejudice the jurors’ decision-making process. Id. at 587. 
Harris states six factors we should consider:
      (1) the source of the error,
      (2) the nature of the error,
      (3) whether and to what extent the State emphasized the error,
      (4) the probable implications of the error,
      (5) how much weight a juror would probably place on the error, and
(6) whether declaring the error harmless would encourage the State to repeat the error.

Id.
      Our analysis shows:
      (1)  The source of the error was the State, which offered the statement in its entirety.
 
      (2)  The nature of the error was that Shilling did not have an opportunity to cross-examine
a key witness against him.
 
      (3)  The State emphasized the statement in its closing argument, reading the part about
Shilling pointing a gun at the victim.
 
      (4,5)     Kahanek’s statement probably had little effect on the jury. The jury was instructed
under the law of the parties. Tex. Pen. Code Ann. §§ 7.02, 7.03 (Vernon 1994). 
By these instructions, Shilling could be convicted even if he did not use the gun, as
long as one of his co-conspirators did. Actually, proving specifically who used the
gun was not necessary, just so there was proof someone in the group did. There was
evidence of that. The victim testified that one of his attackers used a gun. Fourteen-year-old co-conspirator Burns testified that he saw Shilling pointing at the victim like
he had a gun, and heard someone threaten to shoot the victim. However, he stopped
short of testifying he saw Shilling holding a gun or that it was Shilling who made the
threat. John Abney testified that the night of the robbery Shilling spoke of having
a gun in the car. A gun was also recovered from the co-conspirator’s car. 
Therefore, these Harris factors weigh heavily in the State’s favor.
 
      (6)  Declaring the error harmless would not necessarily encourage the State to repeat the
error. The State’s knowing that reversal is a possible consequence under Harris, even
if the non-erroneously admitted evidence is sufficient to convict, is a deterrent to future
violations.

Weighing the Harris factors, especially “4" and “5," we conclude beyond a reasonable doubt that
the statement did not prejudice the juror’s decision-making process.
Conclusion
      We overrule Shilling’s sole issue and affirm the judgment.

                                                                         BILL VANCE
                                                                         Justice
Before Chief Justice Davis,
      Justice Vance, and
      Justice Gray
Affirmed
Opinion delivered and filed October 10, 2001
Publish
[CR25]