STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

17-657


STATE OF LOUISIANA

VERSUS

KYVONTE LATRELL EAGLIN


**********

APPEAL FROM THE
THIRTY-FIRST JUDICIAL DISTRICT COURT
PARISH OF JEFFERSON DAVIS, NO. CR-716-15
HONORABLE CRAIG STEVE GUNNELL, DISTRICT JUDGE

**********

ELIZABETH A. PICKETT
JUDGE

**********

ON REMAND FROM THE SUPREME COURT

**********

Court composed of Sylvia R. Cooks, Elizabeth A. Pickett, and Phyllis M. Keaty, Judges.


CONVICTION VACATED AND REMANDED.

Alfred F. Boustany, II
Boustany Law Firm
P. O. Box 4626
Lafayette, LA 70502
(337) 261-0225
COUNSEL FOR DEFENDANT-APPELLANT:
    Kyvonte Latrell Eaglin

**Michael C. Cassidy**
**District Attorney - 31st JDC**
**Bennett R. LaPoint**
**Assistant District Attorney**
**P. O. Box 1388**
**Jennings, LA 70546**
**(337) 824-1893**
**COUNSEL FOR APPELLEE:**
     **State of Louisiana**

**PICKETT, Judge.**

## FACTS

The defendant, Kyvonte Latrell Eaglin, attended a party at the American Legion Hall in Jennings on August 8, 2015. An altercation broke out, and a group moved outside. The defendant went to his vehicle and retrieved a gun. Shots from one or more firearms were fired, and the victim was killed.

The defendant was convicted of manslaughter on November 18, 2016. The trial court sentenced the defendant to twenty years at hard labor on January 30, 2017. This court affirmed his conviction and sentence. *State v. Eaglin*, 17-657 (La.App. 3 Cir. 3/28/18), 239 So.3d 1001, *writ granted in part*, 18-822 (La. 3/18/19), 265 So.3d 761 (per curiam).

One of the issues on appeal addressed the introduction of an inflammatory photograph into evidence. This court held the photograph was in fact erroneously introduced, but we found the error to be harmless. The Louisiana Supreme Court granted the defendant's writ application in part and remanded the matter, finding this court "applied the wrong standard in determining whether the error was harmless." *Eaglin*, 18-822 at 1. The supreme court instructed this court to reevaluate the error according to the standard set out in *Chapman v. California*, 386 U.S. 18, 87 S.Ct. 824 (1967).

## DISCUSSION

At trial, the state introduced, as evidence of the defendant's bad character, a copy of a Facebook photograph of the defendant, who was approximately thirteen years old at the time. The photograph falsely portrayed the defendant as a masked armed robber holding a dangerous pistol to the back of a child's head, as though ready to shoot the child. The trial court itself described the photograph as "inflammatory." Later in the trial, the defendant's sixteen-year-old cousin,

Latavius Stewart, testified the photograph was taken approximately four years earlier. Mr. Stewart was the boy standing against the wall while the defendant held a BB gun against his head. Another cousin took the photo. Mr. Stewart said they were "[j]ust having fun with it. We were being silly. Just taking pictures."

This court found:

> This photograph, Exhibit S-2, provided no useful purpose at trial. Chief D'Albor's testimony did not show he relied on it at the scene to identify the defendant. Even if he had, it would still add nothing to help the jury reach a verdict. The photograph depicted nothing related to the crime for which the defendant was on trial. It did, however, present a disturbing image to the jury that portrayed the defendant as one who held a gun to a young boy's head. Only later in the trial did the jury hear testimony explaining the photograph, which in itself did not cast the defendant in a particularly good light.

*Eaglin*, 239 So.3d at 1020. Thus, this court found the photograph to be "totally irrelevant," "highly prejudicial," and without probative value, and it found the trial court erred in admitting it into evidence. *Id.* at 1027. However, this court reviewed the testimony of numerous witnesses, including the defendant's own testimony, and found "[t]here was consistent testimony regarding the fight that preceded the shooting that was sufficient to convict the defendant of manslaughter." *Id.*

The Louisiana Supreme Court granted the defendant's writ application in part and remanded the matter, finding this court "applied the wrong standard." *Eaglin*, 18-822 at 2. The supreme court instructed this court "to determine whether the state has proved beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained" in accordance with *Chapman*, 386 U.S. 18. *Id.*

Chapman standard

In *Chapman*, 386 U.S. 18, the state's counsel made repeated references to the defendants' failure to testify during his closing argument to the jury, a practice which California's state constitution allowed at the time. After the trial, but before

the appeal reached the California Supreme Court, the U.S. Supreme Court found the state constitutional provision invalid in *Griffin v. State of California*, 380 U.S. 609, 85 S.Ct. 1229 (1965). Nevertheless, the California Supreme Court affirmed the *Chapman* defendants' convictions, admitting the defendants had been denied a federal constitutional right but finding the error harmless.

The Court explained:

> The federal rule emphasizes "substantial rights" as do most others. The California constitutional rule emphasizes "a miscarriage of justice," but the California courts have neutralized this to some extent by emphasis, and perhaps overemphasis, upon the court's view of "overwhelming evidence." We prefer the approach of this Court in deciding what was harmless error in our recent case of Fahy v. State of Connecticut, 375 U.S. 85, 84 S.Ct. 229, 11 L.Ed.2d 171. There we said: "The question is whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction." Id., at 86-87, 84 S.Ct. at 230 . . . . [*Fahy*] emphasizes an intention not to treat as harmless those constitutional errors that "affect substantial rights" of a party. An error in admitting plainly relevant evidence which possibly influenced the jury adversely to a litigant cannot, under *Fahy*, be conceived of as harmless. Certainly error, constitutional error, in illegally admitting highly prejudicial evidence or comments, casts on someone other than the person prejudiced by it a burden to show that it was harmless. It is for that reason that the original common-law harmless-error rule put the burden on the beneficiary of the error either to prove that there was no injury or to suffer a reversal of his erroneously obtained judgment. There is little, if any, difference between our statement in Fahy v. State of Connecticut about "whether there is a reasonable possibility that the evidence complained of might have contributed to the conviction" and requiring the beneficiary of a constitutional error to prove beyond a reasonable doubt that the error complained of did not contribute to the verdict obtained. We, therefore, do no more than adhere to the meaning of our *Fahy* case when we hold, as we now do, that before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.

*Chapman*, 386 U.S. at 23-24 (footnotes omitted).

The Court refined the *Chapman* rationale in *Sullivan v. Louisiana*, 508 U.S. 275, 113 S.Ct. 2078 (1993):

> Harmless-error review looks, we have said, to the basis on which "the jury *actually rested* its verdict." *Yates v. Evatt,* 500 U.S. 391, 404, 111

3

S.Ct. 1884, 1893, 114 L.Ed.2d 432 (1991) (emphasis added). The inquiry, in other words, is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in *this* trial was surely unattributable to the error. That must be so, because to hypothesize a guilty verdict that was never in fact rendered—no matter how inescapable the findings to support that verdict might be—would violate the jury-trial guarantee. See *Rose v. Clark,* 478 U.S. 570, 578, 106 S.Ct. 3101, 3105, 92 L.Ed.2d 460 (1986); *id.,* at 593, 106 S.Ct., at 3114 (BLACKMUN, J., dissenting); *Pope v. Illinois,* 481 U.S. 497, 509–510, 107 S.Ct. 1918, 1926, 95 L.Ed.2d 439 (1987) (STEVENS, J., dissenting).

*Sullivan*, 508 U.S. at 279-80. The Louisiana Supreme Court has "adopted the *Sullivan* refinement of *Chapman*." *State v. Johnson*, 94-1379, p. 14 (La. 11/27/95), 664 So.2d 94, 100.

Accordingly, we will review the defendant's Assignment of Error Number 7 to determine whether the state proved beyond a reasonable doubt that the error did not contribute to the verdict, not whether the legally admitted evidence was sufficient for a conviction, and whether the jury's verdict was surely unattributable to the error.

*Application of* Chapman

This court previously found the photograph was irrelevant, highly prejudicial, and erroneously admitted into evidence. It "had nothing to do with the crime for which the defendant was tried." *Eaglin*, 239 So.3d at 1020. It "was not reasonably useful in identifying the defendant at the scene of the crime" and "provided no useful purpose at trial." *Id.* The photograph presented "a disturbing image to the jury that portrayed the defendant as one who held a gun to a young boy's head" and "did not cast the defendant in a particularly good light." *Id.* This court considered all the evidence and determined it was sufficient to convict the defendant of manslaughter. This court, however, did not determine whether the

4

state proved beyond a reasonable doubt that the error of admitting the photograph did not contribute to the verdict.

The defendant in *State v. Small*, 11-2796 (La. 10/16/12), 100 So.3d 797, was convicted of second degree murder because she left her children home alone in the middle of the night. One of the children died in a fire that broke out while she was gone. The trial court allowed photographs of the defendant's prior residence to show the earlier residence had constituted a fire hazard. The supreme court considered the photographs "problematic" and felt they showed the defendant was a neglectful parent. *Id.* at 814. The defendant admitted she had left the children alone to go out drinking. No evidence suggested the present home was not clean or that any condition of the home caused the fire. Citing *Chapman* and *Sullivan*, the supreme court determined the guilty verdict was unattributable to the admission of the photographs into evidence and affirmed the defendant's conviction.

In *State v. Welcome*, 458 So.2d 1235 (La.1983), *cert. denied*, 470 U.S. 1088, 105 S.Ct. 1856 (1985), the trial court refused to allow evidence of alleged fights between the defendant and his two victims, the victims' frequent fights with each other, and the victims' habits of carrying firearms. The supreme court determined any error was harmless, citing *Chapman*, because "it is clear beyond a reasonable doubt that any error in the trial court's ruling did not contribute to the defendant's conviction[.]" *Id.* at 1244. The court found the excluded evidence was cumulative and would have added nothing to the other evidence of the victims' violent tempers.

The issue in *State v. Gibson*, 391 So.2d 421 (La.1980), was whether the introduction of a coat obtained by an unreasonable search and seizure constituted harmless error. Our supreme court found the coat was of limited value in connecting the defendant with the robbery even though it was found in his hotel

room and was identified by two witnesses as belonging to the culprit in the robbery. Those two witnesses positively identified the defendant as the robber, and both observed him at close range during the commission of the crime. They also identified the gun found in the defendant's room. At the time of his arrest, the defendant had possession of the vehicle stolen from one of the witnesses. The court, applying the *Chapman* standard, found the state "carried its burden by showing that the possibility the introduction of the ordinary black leather coat might have contributed to the defendant's conviction was very slight and less than reasonable." *Gibson*, 391 So.2d 428. Thus, the erroneous admission of the coat was "harmless beyond a reasonable doubt." *Id.*

A witness in *State v. Allen*, 03-2418 (La. 6/29/05), 913 So.2d 788, *cert. denied*, 547 U.S. 1132, 126 S.Ct. 2023 (2006), was unable to identify the defendant at trial.[1] The state offered into evidence a photograph of the defendant taken the day after his arrest, along with a black and white photograph of poor quality and a color photograph both taken approximately three months later. The trial court allowed the photograph on the day of the arrest and the color photograph taken later. It disallowed the black and white photograph.

The state had offered the photographs to show how the defendant's appearance had changed during the three years between his arrest and his trial. The state argued the witness's failure to recognize the defendant at trial was reasonable based on this change in appearance. The supreme court determined the photographs were relevant to the defendant's identity and his altered appearance. Citing *Sullivan*, 508 U.S. 275, and *Chapman*, 386 U.S. 18, the supreme court commented:

---

[1]This issue is discussed in an unpublished appendix to the case.

6

> A reviewing court must determine whether there is a reasonable possibility that the complained-of error might have contributed to the verdict. It must be able to declare a belief that the error was harmless beyond a reasonable doubt and to state that the verdict rendered was "surely unattributable to the error."

*Allen*, 913 So.2d at appendix Guilt Phase Argument 5 Assignment of Error 29. The court determined the defendant failed to show how the admission of the photographs affected any of his substantial rights.

The trial court allowed parts of a letter written by one of the victims into evidence in *State v. Magee*, 11-574 (La. 9/28/12), 103 So.3d 285, *cert. denied*, 571 U.S. 830, 134 S.Ct. 56 (2013). The victim had written the letter to the defendant, but she had never sent it. The supreme court found the trial court "erred when it failed to redact those sections of the letter dealing with the defendant's past behavior." *Id.* at 317-18. The court found the error harmless, however, because "there was ample evidence from which jurors could reasonably conclude . . . that the shooting deaths were the angry and calculated culmination of an unraveling marriage." *Id.* at 318. Other evidence showed the marriage was over at the time of the murders. The admission of parts of the letter discussing the defendant's abuse of the victim was harmless error in light also of evidence of recordings of the defendant's telephone messages to the victim. Additionally, a petition for a protective order set out allegations of threats from the defendant. Thus, the supreme court held, "in the context of this evidence, any error in the admission of the letter was clearly harmless and the verdict actually rendered by the jury was surely unattributable to that error." *Id.* at 319.

These cases are distinguishable from the instant matter. Credibility of the witnesses at trial was an issue. The defendant initially told police he did not have a gun but later said he had one but left it in his car. Ultimately, he admitted he had a gun, but he only shot it into the air. This court found the testimony of witness

Jashanna Drake was "so inconsistent it cannot be relied on for establishing any fact." *Eaglin*, 239 So.3d at 1027. Firearms analysis showed obviously two firearms at the scene. However, the expert could not unequivocally say the bullet fragment removed from the victim and the spent shell casings found at the scene were fired from the same gun, and she admitted the possibility that three guns were present. The coroner testified the victim was less than two feet from the barrel of the gun at the time it discharged, but "Monteca Drake testified she saw the defendant fire the first shot, but she did not see the victim near the defendant when he fired . . . . Shadavia Capdeville told police the defendant shot in the air, but she testified at trial the defendant shot the victim." *Eaglin*, 239 So.3d at 1027. Jermaine "Dutt" Washington, a material witness who testified he did not see anyone shooting a gun but who said he had fired a gun at the scene himself, agreed to testify as part of his plea agreement.[2] *Id.*

This court found the admission of the photograph into evidence was a harmless error, citing the facts that "no less than four eyewitnesses testified that they either saw the defendant shoot the victim or shoot in his direction. There was consistent testimony regarding the fight that preceded the shooting that was sufficient to convict the defendant of manslaughter." *Id.* at 1027.

Testimony at trial did not clearly identify the purpose for which the photograph was admitted into evidence. The state argued the photograph "'shows that he has a gun – that he has a handgun . . . and that he doesn't always use that gun for protection. That he does other things with that gun besides keeping it for protection . . . .'" *Id.* at 1016. This argument indicates the state intended the photograph to provide evidence of the defendant's bad character. Such a use of the

_____

[2]Mr. Washington pled guilty to illegal use of a firearm. He testified he was sentenced to one year at hard labor, but "'they put it to home incarceration and two-year probation.'" *Eaglin*, 239 So.3d at 1023.

8

photograph by the state was improper under La.Code Evid. art. 404(A)(1). Jennings Police Chief Todd D'Albor testified he did not "have a high opinion" of the conduct shown in the photograph. *Eaglin*, 239 So.3d at 1018. He commented, "If you're asking me of my opinion of what this picture depicts it doesn't make me thin[k] anything good." *Id. at* 1019.

The Court in *Chapman*, 386 U.S. 18, dealt with "plainly relevant evidence which possibly influenced the jury adversely to a litigant" and found the error was not harmless. *Id.* at 23. Here, the evidence was, according to this court, irrelevant, highly prejudicial, and erroneously admitted.

The jury had to make credibility determinations in reaching its verdict based on the conflicting testimony. The jury could reasonably have been influenced against the defendant by the photograph and testimony about it. The photograph suggested the defendant was a violent person who totes guns and points them at people without regard for the possibility of causing death or great bodily harm. The jury heard the Chief of Police testify he did not have a high opinion of the defendant's conduct. The state's argument suggested the defendant habitually carried a handgun, something that was not supported by other evidence. The photograph was unsupported by any admissible, relevant evidence and was offered to cast the defendant in a bad light.

The evidence, while it may have been sufficient to support the defendant's conviction, does not overwhelmingly show the photograph had no impact on the verdict. Accordingly, we find the state did not bear its burden of showing beyond a reasonable doubt that the trial court's error did not contribute to the defendant's conviction, and the guilty verdict in this trial was not surely unattributable to the error. Thus, the error was not harmless, and the defendant is hereby granted a new trial.

9

## CONCLUSION

The state did not bear its burden of proving the erroneous introduction of the photograph was harmless beyond a reasonable doubt. The guilty verdict was not surely unattributable to the error. The defendant's conviction is hereby vacated, and this matter is remanded to the trial court for a new trial.

**CONVICTION VACATED AND REMANDED.**